
USCA1 Opinion

	




                            United States Court of Appeals
                            United States Court of Appeals                                For the First Circuit
                                For the First Circuit                                _____________________          No. 95-1346                                   MARK LEVASSEUR,                                       Appellant,                                          v.                                     PETER PEPE,                                      Appellee.                                _____________________                     APPEAL FROM THE UNITED STATES DISTRICT COURT                          FOR THE DISTRICT OF MASSACHUSETTS                   [Hon. Douglas P. Woodlock, U.S. District Judge]
                                              ___________________                                _____________________                                        Before                                Stahl, Circuit Judge,
                                       _____________                           Campbell, Senior Circuit Judge,
                                     ____________________                              and Lynch, Circuit Judge.
                                         _____________                                _____________________                                     ERRATA SHEET
                                     ERRATA SHEET               The opinion issued on November 22, 1995, should be amended          as follows:                    On Page 3, lines 1-2, delete the victim's                    name and replace with "the victim (`Jane                    Doe')".                    On page 14, at the last two lines of the indented                    quotation, replace the victim's name with "[Jane Doe]"                    On the following locations, replace the                    victim's last name with "Doe" or "Doe's":                    Page 3, lines 3, 4, 5, 7, 11, 12, 13, 15 (2                    times), 16, 18 and 21                    Page 4, lines 2, 4, 11 and 24

                    Page 5, lines 1, 4, 6, 10, 17, 19 and 21                    Page 6, lines 1 and 2                    Page 16, lines 6, 7, 8, 13, 15 and 19                    Page 17, lines 1, 4, 10, 14, 17 and 19                    Page 18, lines 6 and 13                    Page 19, line 15 and line 2 of footnote 6                    Page 20, lines 1, 3, 9, 14 and 21                    Page 21, lines 2, 8, 10, 15 and line 1 of                    footnote 8                    Page 22, line 4                    Page 25, line 8 of footnote 9                    Page 26, lines 10, 12, 14, 17 and line 4 of                    footnote 10                    Page 27, line 23                    Page 29, line 23                    Page 30, line 6

                            United States Court of Appeals
                            United States Court of Appeals                                For the First Circuit
                                For the First Circuit                                _____________________          No. 95-1346                                   MARK LEVASSEUR,                                       Appellant,                                          v.                                     PETER PEPE,                                      Appellee.                                _____________________                     APPEAL FROM THE UNITED STATES DISTRICT COURT                          FOR THE DISTRICT OF MASSACHUSETTS                   [Hon. Douglas P. Woodlock, U.S. District Judge]
                                              ___________________                                _____________________                                        Before                                Stahl, Circuit Judge,
                                       _____________                           Campbell, Senior Circuit Judge,
                                     ____________________                              and Lynch, Circuit Judge.
                                         _____________                                _____________________               Thomas J. Gleason for appellant.
               _________________               William J. Duensing, Assistant Attorney General, with whom
               ___________________          Scott Harshbarger, Attorney General of the Commonwealth of
          _________________          Massachusetts, was on brief for appellee.                                _____________________                                  November 22, 1995                                _____________________

                      STAHL, Circuit Judge.  In January of 1990,
                      STAHL, Circuit Judge.
                             _____________            petitioner Mark Levasseur was convicted in a Massachusetts            state court of rape, indecent assault and battery, and            assault and battery.  After exhausting his state court            remedies, Levasseur sought a writ of habeas corpus in the            United States District Court for the District of            Massachusetts, pursuant to 28 U.S.C.   2254, claiming that            his state convictions were obtained in violation of the            United States Constitution.  Specifically, Levasseur asserted            that an improper admission of hearsay testimony violated his            Sixth Amendment right to confrontation, an unduly suggestive            identification procedure violated his Fourteenth Amendment            right to due process of law, and his trial counsel's            deficient performance deprived him of his Sixth Amendment            right to the effective assistance of counsel.  The district            court denied the habeas application, and this appeal            followed.  For the reasons discussed below, we affirm.                                          I.
                                          __                                      BACKGROUND
                                      __________            A.  Pretrial Events1
            ___________________                      At some time between the late evening and early            morning hours of June 30 and July 1, 1988, a man driving a                                
            ____________________            1.  For  a more  comprehensive statement  of  the facts,  see            Commonwealth v.  Levasseur, 592  N.E.2d 1350, 1351-53  (Mass.
            ____________     _________            App. Ct.), review denied, 600  N.E.2d 171 (Mass. 1992), cert.
                       ______ ______                                _____            denied, 113 S. Ct. 978 (1993).
            ______                                         -2-
                                          2

            big, dark-colored, "4 x 4" pickup truck approached the victim            ('Jane Doe') as she was walking on the sidewalk and asked her            if she wanted a ride.  Undeterred by Doe's initial rejection,            the driver returned and Doe relented.  Instead of dropping            Doe at her destination, the driver took her to a deserted            area behind a factory and raped her on the truck seat.  Her            attacker, still restraining Doe, drove away from the scene            and then pushed her out of the truck.                      Ronald Ralls, driving behind the truck, saw Doe            fall from the truck and stopped to render aid.  Ralls drove            Doe to his home and notified the police.  Officer Mendes            arrived, but Doe rebuffed his attempts to approach her.  The            officer detected the smell of alcohol on Doe's breath.             Emergency paramedics transported Doe to the hospital.  Doe's            continued refusal to let anyone touch her prevented the            hospital staff from administering a "rape kit."  Eventually,            Doe, in the presence of Officer Mendes, related the incident            in general terms to a female hospital administrator.                      Five days later at the police station, Doe further            recounted the incident to Inspector Boutselis.  She described            her assailant's pickup truck as a big, dark "4 x 4" sitting            high off the ground and her attacker as a white male with a            medium-type build, thin face, high cheekbones, dark hair,            dark eyelashes, and a small moustache.  Boutselis showed Doe            over six thousand photographs of white males.  A 1983                                         -3-
                                          3

            photograph of Levasseur was among the six thousand.  Although            Doe said several photographs, including Levasseur's, looked            similar to her assailant, she was unable to make an            identification.                      On July 13, 1988, because of a new lead, Inspectors            Boutselis and Guilfoyle began to focus on Levasseur.  On            their way to Levasseur's residence in an unmarked car,            Boutselis and Guilfoyle noticed a pickup truck fitting Doe's            description.  Boutselis and Guilfoyle observed the truck pull            over to the side of the road, saw the driver beckon to a            young blond-haired girl walking on the sidewalk, and heard            him say "Come on."  After the girl continued walking and the            truck drove on, Guilfoyle questioned the girl, who said that            the man in the truck had offered her a ride but she did not            know him.  Learning from the police dispatcher that the truck            belonged to Levasseur, Boutselis and Guilfoyle stopped            Levasseur and asked about the girl.  Levasseur told them that            she was his cousin and he had offered her a ride, but he did            not volunteer her name.  Levasseur agreed to go to the police            station, where Boutselis and Guilfoyle questioned and            photographed him.                      The next day, Inspector Boutselis showed Doe a            group of sixty photographs including Levasseur's photograph            from the day before.  Doe stated that Levasseur's recent            photograph looked like her assailant and asked Boutselis for                                         -4-
                                          4

            more photographs of Levasseur.  Upon examining Levasseur's            1983 photograph, Doe said that it looked more like her            assailant than the recent photograph.  Given the seriousness            of the charges, Doe refused to make a positive identification            of Levasseur based solely on the photographs and requested to            see him in person.                      Using an unmarked car, Inspector Boutselis and Doe            began field identifications.2  Over the next five months,            they made nine excursions lasting two to three hours each to            locations near Levasseur's place of work and home.  On five            occasions, they sat outside the Textron plant in Wilmington            thinking that Levasseur was employed there.  Levasseur, it            was later discovered, worked at Digital Equipment            Corporation, not Textron.  On the remaining four occasions,            Boutselis and Doe sat at an intersection in North Chelmsford            one-half mile from Levasseur's home.  Doe never positively            identified anyone on the first eight excursions.  During the            ninth trip, on December 16, 1988, however, Doe saw            Levasseur's truck approach and exclaimed, "Wow, this looks            like it."  As the truck came within six feet of Doe and            Levasseur looked in her direction, Doe screamed, "It's him,            it's him.  Get me . . . out of here right now."                                
            ____________________            2.  Because  Levasseur  was no  longer  cooperating  with the            investigation and probable cause to arrest him did not exist,            Inspector  Boutselis   could   not   require   Levasseur   to            participate in a line-up.                                         -5-
                                          5

            B.  The Trial
            _____________                      On January 24, 1990, Levasseur was brought to trial            on charges of rape, indecent assault and battery, and assault            and battery.  The prosecution called six witnesses in its            direct case and one witness on rebuttal, with Levasseur            calling himself, his wife, and his mother-in-law as his            defense witnesses.                      In his rebuttal case, the district attorney called            Inspector Guilfoyle to testify about the July 13, 1988,            incident with the blond-haired girl (we use the language used            at trial and refer to "the blond-girl incident").  In            recounting his conversation with the blond girl, Inspector            Guilfoyle uttered the following hearsay testimony:                      Q.  Sir, . . . what was the nature of the                      conversation with her [the blond girl]?                      A.  We pulled up; we were in an unmarked                      vehicle.  We identified ourselves to the                      young lady.  We asked her if she knew the                      gentleman in the truck; she said no.  We
                                              ___________                      asked her if she could tell us what he                      wanted and she said he offered her a
                                 _________________________                      ride.
                      ____            (emphasis added).                              After a three-day trial, the jury found Levasseur            guilty of rape, indecent assault and battery, and assault and            battery.  Levasseur was sentenced to concurrent state prison            terms of ten to fifteen years and four to five years.            C.  Post-Conviction Proceedings
            _______________________________                                         -6-
                                          6

                      After the jury's verdict, Levasseur filed a motion            for a new trial which the trial court denied.  The            Massachusetts Appeals Court affirmed the convictions, and the            Supreme Judicial Court of the Commonwealth of Massachusetts            denied Levasseur's petition to obtain further appellate            review.  The United States Supreme Court denied Levasseur's            petition for a writ of certiorari.                        Having exhausted his state remedies, Levasseur            filed a petition for habeas corpus in the United States            District Court for the District of Massachusetts.  The            district court denied the petition for the following reasons.             Levasseur's trial counsel had procedurally defaulted on the            claim of unduly suggestive identification by his failure to            object.  The court held that Levasseur could not excuse this            procedural default because he could not show cause for that            failure via a claim of ineffective assistance of counsel.             Counsel's failure to object did not constitute deficient            performance because the identification method was not unduly            suggestive.  With respect to the hearsay claim, the court            held that Levasseur's Confrontation Clause rights were            violated, but the error was harmless.  Finally, according to            the district court, Levasseur's remaining ineffective-            assistance-of-counsel claims failed because trial counsel's            overall performance was not deficient and Levasseur suffered            no prejudice.                                         -7-
                                          7

                                         II.
                                         ___                                      DISCUSSION
                                      __________                      On appeal, Levasseur makes the following four            arguments:  (1) he did not procedurally default on his Due            Process and Confrontation Clause claims, (2) the violation of            his Sixth Amendment right to confrontation was not harmless            error, (3) the pre-trial identification procedure was unduly            suggestive and violated his Fourteenth Amendment right to due            process of law, and (4) he was denied effective assistance of            counsel.  We discuss each argument in turn.            A.  Procedural Default
            ______________________                      Levasseur asserts that the district court erred in            holding that he procedurally defaulted on his Due Process and            Confrontation Clause claims.  Levasseur admits that his trial            counsel did not object to the pre-trial identification            procedure and the hearsay statement as each was introduced            and acknowledges that, to consider such claims on appeal,            Massachusetts requires contemporaneous objection to their            admission as evidence at trial, Mass. R. Crim. P. 24(b).  He            contends, however, that his filing a motion for new trial and            the trial court's consideration of the issues presented acted            to resurrect and preserve these claims for review.  We            disagree.                      Under Massachusetts case law, issues previously            lost for appeal may be resurrected and preserved for                                         -8-
                                          8

            appellate review if a trial judge exercises his discretion            and considers them in ruling on a motion for a new trial.             See Commonwealth v. Harrington, 399 N.E.2d 475, 478 (Mass.
            ___ ____________    __________            1980); Commonwealth v. Gagne, 326 N.E.2d 907, 911 (Mass.
                   ____________    _____            1975); Commonwealth v. Buckley, 458 N.E.2d 781, 783 (Mass.
                   ____________    _______            App. Ct.), review denied, 461 N.E.2d 1219 (Mass. 1984). 
                       ______ ______            Whether the trial court considered Levasseur's Due Process            and Confrontation Clause claims and thereby waived his            procedural default is a legal question subject to our plenary            review.  See Burks v. Dubois, 55 F.3d 712, 716 (1st Cir.
                     ___ _____    ______            1995) (reviewing de novo question of whether state court's
                             __ ____            limited review of petitioner's claim for miscarriage of            justice effected a waiver); Puleio v. Vose, 830 F.2d 1197,
                                        ______    ____            1200 (1st Cir. 1987), cert. denied, 485 U.S. 990 (1988)
                                  _____ ______            (same).                      In ruling on Levasseur's motion for new trial, the            trial judge did not consider Levasseur's Due Process and            Confrontation Clause claims individually but rather only as            part and parcel of Levasseur's ineffective-assistance-of-            counsel claim.  The court concluded that the attorney's            failure to object to the identification process and the            hearsay testimony was not ineffective assistance of counsel.             Because the trial judge never considered the Due Process and            Confrontation Clause claims severally, it did not resurrect            these procedurally defaulted claims, and we consider them on                                         -9-
                                          9

            appeal only as they constitute part of Levasseur's            ineffective-assistance-of-counsel claim.                      Levasseur invites this court to rule that an            appellant claiming ineffective assistance of counsel in a            motion for a new trial before a state trial court preserves            for habeas corpus review not only the ineffective-assistance-            of-counsel claim but the substantive claims subsumed within            the ineffective-assistance-of-counsel claim.  In this case            and typically, however, the substantive claims underlying the            ineffective-assistance-of-counsel claim are constitutional            claims that were procedurally defaulted due to the            ineffective performance of counsel.  In Coleman v. Thompson,
                                                    _______    ________            501 U.S. 722, 750 (1991), the Supreme Court ruled that            federal habeas review of procedurally defaulted claims is            barred unless the petitioner demonstrates (1) cause for the            default and "actual prejudice as a result of the alleged            violation of federal law" or (2) that failure to consider the            claims will result in "a fundamental miscarriage of justice."             By proposing that procedurally defaulted claims should also            be preserved if they form part of an ineffective-assistance-            of-counsel claim, Levasseur suggests that we create a third            way to excuse procedural default, where Coleman purposefully
                                                    _______            provides only two.  Recognizing Levasseur's suggestion as an            attempt to make an end run around Coleman, we refuse his
                                              _______            invitation.                                         -10-
                                          10

                      Having determined that the trial court did not            resurrect Levasseur's otherwise procedurally defaulted Due            Process and Confrontation Clause claims, we turn our            attention to determining whether we nonetheless may review            the procedurally defaulted claims on habeas.  We begin by            considering the Confrontation Clause claim.            B.  Inadmissible Hearsay
            ________________________                      Where a petitioner, like Levasseur, has            procedurally defaulted on his claim, we reach the merits on            habeas corpus review only if the default can be excused by            establishing either cause for the default and actual            prejudice resulting therefrom or that failure to consider the            claim will result in a "substantial miscarriage of justice."             Coleman, 501 U.S. at 750.  Should the petitioner surmount
            _______            this hurdle and excuse his default, we may then reach the            merits of his claim and determine whether a constitutional            error has occurred and, if so, whether the error was harmless.3                                
            ____________________            3.  We note that  the Fourth  and Eighth  Circuits have  held            that  once cause and prejudice is  found sufficient to excuse            the procedural default  and an error is found  on the merits,            no  additional harmless-error review  is necessary.   Hill v.
                                                                  ____            Lockhart,  28  F.3d   832,  839  (8th  Cir.   1994)("[I]t  is
            ________            unnecessary  to   add  a  separate  layer  of  harmless-error            analysis to an evaluation of whether a petitioner in a habeas            case has  presented a constitutionally significant  claim for            ineffective assistance  of counsel."), cert.  denied, 115  S.
                                                   _____  ______            Ct. 778  (1995); Smith v. Dixon,  14 F.3d 956, 974,  976 (4th
                             _____    _____            Cir.)  (en  banc),  cert.  denied,  115  S.  Ct. 129  (1994).
                                _____  ______            Because  we  review  the Confrontation  Clause  issue  as the            district court decided it,  assuming arguendo that  Levasseur
                                                 ________            excused his procedural default, we need not decide whether we            agree with our sister circuits.                                         -11-
                                          11

                      In considering Levasseur's procedurally defaulted            Confrontation Clause claim, the district court assumed            arguendo that Levasseur had excused his default and limited
            ________            its analysis to the merits of Levasseur's Confrontation            Clause claim.  Specifically, the district court held that            although Inspector Guilfoyle's testimony about the blond            girl's statements was inadmissible hearsay that violated            Levasseur's Sixth Amendment right to confront his accusers,            it was harmless error.  Similarly we limit our analysis to            the determination of harmless error and affirm for the            reasons that follow.                      We first set forth the legal framework.  The            standard here for determining whether habeas relief must be            granted because of unconstitutional trial error is the            Brecht/Kotteakos standard of harmless error.  Under that
            ______ _________            standard, an unconstitutional trial error is harmless unless            the court finds with fair assurance that the error,            considered in light of the record as a whole, "`had [a]            substantial and injurious effect or influence in determining            the jury's verdict.'"  Brecht v. Abrahamson, 113 S. Ct. 1710,
                                   ______    __________            1721-22 (1993) (quoting Kotteakos v. United States, 328 U.S.
                                    _________    _____________            750, 776 (1946)); see Kotteakos, 328 U.S. at 765 (holding
                              ___ _________            that requisite degree of certainty is "fair assurance").             Assessments of harmless error are necessarily context-            specific.  Kotteakos, 328 U.S. at 762.  The following
                       _________                                         -12-
                                          12

            factors, however, are relevant to our determination of            whether the jury was substantially swayed by the tainted            hearsay evidence:  (1) the extent to which the error            permeated the proceeding, (2) the centrality of the issue            affected by the error to the case as actually tried and (3)            the relative strength of the properly admitted evidence of            guilt.  See Brecht, 113 S. Ct. at 1722 (considering
                    ___ ______            infrequency of state's references to constitutional error and            strength of evidence of guilt as factors relevant to            assessing whether error "substantially influence[d]" jury);            Shaw v. Collins, 5 F.3d 128, 132-33 (5th Cir. 1993)
            ____    _______            (considering centrality of the issue affected by the error to            the case as tried and finding that Confrontation Clause            violation was not harmless because tainted testimony "was the            linchpin in the State's case").  After reciting the standard            of review, we consider each factor in turn.                      Because a harmless-error determination on habeas            corpus review is a mixed question of law and fact, we examine            this issue de novo.  Brecht, 113 S. Ct. at 1724 (Stevens, J.,
                       __ ____   ______            concurring); Scarpa v. Dubois, 38 F.3d 1, 9 (1st Cir.
                         ______    ______            1994)(holding that "[i]n federal courts, mixed questions of            law and fact arising in section 2254 cases are ordinarily            subject to de novo review"), cert. denied, 115 S. Ct. 940
                       __ ____           ____  ______            (1995).                      1.  Prevalence of the error
                      ___________________________                                         -13-
                                          13

                      The constitutional error in this case consists of            two discrete statements uttered at the end of the trial.             During his rebuttal case, the district attorney violated            Levasseur's Sixth Amendment right to confront his accusers by            eliciting from Inspector Guilfoyle the hearsay testimony            about the blond girl's statements to him.  Specifically,            Guilfoyle testified that the blond girl said Levasseur had            offered her a ride and that she had said no.  In his closing            argument, the district attorney paraphrased the offending            statement:                      One can look at this case, and if one                      adds up the facts that were proven beyond                      a reasonable doubt and then add any                      inferences that can be drawn from the                      account with the young female on the                      bridge on July 13th, with almost the same
                                           ____________________                      words that were spoken to [Jane Doe]:  Do
                      _________________________________________                      you want a ride?
                      ________________            (emphasis added).                        Viewing these two constitutionally erroneous            statements in the context of the trial as a whole, we find            that they did not permeate the trial proceedings.  During his            opening argument and throughout the presentation of his            direct case, the district attorney carefully avoided any            hearsay testimony about the blond girl's statements.  The            district attorney purposefully excluded Guilfoyle--the only            witness with personal knowledge of the blond girl's            statements--from the six witnesses who testified as part of            his direct case.  Only after Levasseur took the stand and                                         -14-
                                          14

            stated that the blond girl was his cousin did the district            attorney offer Guilfoyle's hearsay evidence on rebuttal and            paraphrase it in his closing argument.  At least on the facts            of this case, an error occurring in the rebuttal case and            repeated once in closing argument--comprising three lines in            a 513-page transcript--is not prevalent in the context of a            three-day trial in which the opening argument and direct case            (the first two days) are free of error.  See Brecht, 113 S.
                                                     ___ ______            Ct. at 1722 (finding that error comprising less than two            pages of a 900-page trial transcript was not prevalent).4                                
            ____________________            4.  Levasseur would have  us consider every reference  to the            blond-girl incident in determining prevalence.  Although such            evidence   is  relevant  to  the  next  factor  we  consider,            determining  the  centrality  of the  issue  affected  by the            error, it is not relevant  here.  To determine prevalence, we            need  only ask  how often  the error  occurred.   Because the            other references  to the  blond-girl incident  in the  record            were free of constitutional error, we do not consider them in            assessing  the  error's  prevalence.    For   instance,  when            Inspector  Boutselis testified  in  the prosecution's  direct            case about  the blond-girl  incident, he  limited himself  to            what he saw  and heard  transpire between  Levasseur and  the            blond  girl.  He  stated that he saw  Levasseur beckon to the            blond girl and heard Levasseur call, "Come on."  Because this            evidence  is  free  of   constitutional  error  and   clearly            admissible, we  do not consider  it in assessing  the error's            prevalence.                                         -15-
                                          15

                      2.  Centrality of the issue affected by the error
                      _________________________________________________                      The issue primarily affected by the erroneous            admission of Guilfoyle's hearsay statement was the            prosecution's modus operandi theory: because Levasseur
                          _____ ________            attempted to pick up the blond girl two weeks after Doe's            rape using the same modus operandi he had used to lure Doe
                                _____ ________            into his truck, Levasseur must have raped Doe.5  Had modus
                                                                 _____            operandi been the prosecution's central theory to support
            ________            Levasseur's conviction, the constitutional error in admitting            the hearsay would likely have been fatal to the prosecution's            case and necessarily harmful.  The prosecution, however, only            used the modus operandi evidence to corroborate Doe's
                     _____ ________            otherwise strong identification of Levasseur.  After            considering the trial in its entirety, we find that Doe's            clear identification of Levasseur was the linchpin in the            prosecution's case, and the modus operandi evidence was
                                        _____ ________            merely collateral thereto.                      In his opening argument, the district attorney            concentrated exclusively on Doe's identification of            Levasseur; he did not mention the blond-girl incident.  The                                
            ____________________            5.  Levasseur's  trial   counsel  failed   to  object   under            Massachusetts' rules of  evidence to the introduction  of the            blond-girl  incident  as a  prior  bad  act offered  to  show            identity (modus operandi).   Because 28 U.S.C.    2254 limits
                      _____ ________            habeas  corpus review  of a  state  prisoner's conviction  to            violations  "of the Constitution  or laws or  treaties of the            United  States,"  we   consider  this  failure  only   as  it            implicates the Sixth Amendment right to  effective assistance            of counsel.                                         -16-
                                          16

            bulk of the prosecution's direct case concerned Doe's            identification of Levasseur, to which four of the six            prosecution witnesses testified.  The testimony of the            prosecution's first witness, Doe, centered on her ability to            view her assailant and his truck, the effect of her            consumption of two drinks on her perception, her description            of her assailant and his truck, and her identification of            Levasseur in photo arrays and in the field.  Officer Mendes,            the prosecution's second witness, testified to Doe's            condition closely following the rape, concluding that she was            not intoxicated, and to her initial description of the            incident.  Mr. Ralls, the third witness, gave an eyewitness            description of the truck from which he saw Doe thrown.  He            also described Doe's condition immediately following the            rape, detecting no odor of alcohol.  The sixth and final            witness, Inspector Boutselis, recalled Doe's detailed            description of her assailant, the truck, and the incident,            recounted five days after the rape.  He also recalled Doe's            reactions to the photo arrays and the field identifications.             He then provided the only account of the blond-girl incident            in the prosecution's direct case.  As previously stated, this            account was limited to what Boutselis saw and heard transpire            between Levasseur and the blond girl.                        In response to Levasseur's assertion that the blond            girl was his cousin, the district attorney presented                                         -17-
                                          17

            additional evidence illustrating modus operandi in his
                                             _____ ________            rebuttal case.  Finally, in his closing argument, the            district attorney referred to the blond-girl incident only            twice, focusing his comments instead on Doe's identification            of Levasseur.                      The district attorney's tactical decision not to            introduce the blond-girl incident in his opening argument and            to wait until the last witness in his direct case to do so            reveals the diminished importance the prosecution placed on            the issue of modus operandi.  Conversely, the primacy of
                         _____ ________            Doe's identification of Levasseur is evident throughout the            trial, being the district attorney's focus in both his            opening and closing arguments and his direct case.                        3.  Relative strength of the properly admitted
                      ______________________________________________                      evidence
                      ________                      The final factor tests the strength of the properly            admitted evidence of guilt in deciding whether the error            substantially affected the jury.  Was the properly admitted            evidence so strong that it overwhelmed the impact of the            erroneously admitted evidence?  Or was the case very close,            with evidence evenly balanced on both sides, enhancing the            effect of the error on the jury's verdict?  In answering            these questions, we heed Brecht's warning not to assess the
                                     ______            potential strength of the properly admitted evidence if            offered at a new trial but rather to assess the strength of                                         -18-
                                          18

            the properly admitted evidence as that evidence actually was            presented at the trial.  Brecht, 113 S. Ct. at 1724 (Stevens,
                                     ______            J., concurring) ("The habeas court cannot ask only whether it            thinks the petitioner would have been convicted even if the            constitutional error had not taken place.  Kotteakos is full
                                                       _________            of warnings to avoid that result.").  We find that this            factor also militates against Levasseur and that the            prosecution's properly admitted evidence was strong enough to            minimize the impact of the erroneously admitted hearsay            testimony.                      The prosecution's evidence of Levasseur's guilt,            stripped of the erroneously admitted evidence, reduces to two            broad areas of incrimination:  (1) Doe's identification of            Levasseur and (2) Levasseur's encounter with the blond girl.6             We will consider the strength of each area of incriminating            evidence separately, then cumulatively, and finally we will            compare the prosecution's evidence of guilt to Levasseur's            defense.                                
            ____________________            6.  No  scientific evidence of  Levasseur's guilt, such  as a            semen specimen, exists.   Doe's refusal  to let anyone  touch            her  following the  rape prevented  the  hospital staff  from            administering a "rape kit."                                           -19-
                                          19

                      a.  Doe's identification of Levasseur  
                      _____________________________________                      As the linchpin in the prosecution's case, Doe's            identification of Levasseur is strong inculpatory evidence.             It readily satisfies all but one of the traditional indicia            of reliability that the Due Process Clause requires of            identifications.  See Manson v. Brathwaite, 432 U.S. 98, 114
                              ___ ______    __________            (1977) (setting out the factors for assessing reliability of            identification testimony).  Doe had adequate opportunity to            view her assailant throughout the incident; her degree of            attention during a traumatic experience is presumed to have            been acute, despite her having consumed two drinks earlier            that evening; her prior description of her assailant            accurately fits Levasseur; when she saw Levasseur in his            truck, Doe demonstrated a high degree of certainty in            identifying him as the perpetrator (and this comes from a            woman who appreciated the gravity of the charges as            demonstrated by her refusal to identify Levasseur by his            photo alone and request to see him in person); and she never            positively identified anyone other than Levasseur throughout            the six-month investigation.  Although the six-month lapse            between the rape and Doe's identification of Levasseur is            troubling, its effect is outweighed by the sheer strength and            number of the other factors.                      Officer Mendes' and Inspector Boutselis' testimony            corroborated Doe's identification testimony on certain                                         -20-
                                          20

            events, such as her initial and subsequent descriptions of            her assailant and the truck, her assertion that she was not            intoxicated, and her reactions to the photo arrays and field            identification.  In addition, Mr. Ralls' eyewitness testimony            describing the assailant's truck was consistent with Doe's.                      The only inroads that Levasseur's counsel was able            to make against Doe's credibility was highlighting her            failure to notice a scar on Levasseur's neck and tattoos7 on            his arm despite her testimony that Levasseur was wearing a            tanktop when he raped her.  Such an oversight, however, is            understandable given the circumstances8 and would be unlikely            to undermine Doe's otherwise detailed description.                           b.  Levasseur's encounter with the blond girl
                      _____________________________________________                      After removing the tainted hearsay evidence from            our consideration, we conclude that the remaining evidence            about the blond-girl incident is still moderately probative            of Levasseur's guilt.  Before assessing its probative            strength, we recount the evidence as it came in at trial.                       Inspector Boutselis introduced the blond-girl            incident by testifying that two weeks after Doe's rape he saw            Levasseur drive up to an approximately sixteen-year-old blond                                
            ____________________            7.  Although Levasseur  showed his scar  to the jury,  he did            not show his tattoos to the jury.            8.  Discussing Doe's  failure to notice  Levasseur's tattoos,            the district court found it  reasonable to assume that a rape            victim would focus on her assailant's face rather than on his            arms.                                         -21-
                                          21

            girl walking on the sidewalk, beckon to her, and say "Come            on"; the young girl kept walking and did not get in the            truck.  Boutselis also testified that when he and Guilfoyle            subsequently pulled Levasseur over, Levasseur told Boutselis            that the girl was his cousin and he was going to give her a            ride.  When Boutselis asked Levasseur her name, Levasseur did            not answer.                      Levasseur's testimony provided a different account            of the blond-girl incident.  Levasseur testified that he had            been swimming with his aunt and cousin, that he had taken his            aunt home first, and that he was dropping his cousin off when            Inspectors Boutselis and Guilfoyle arrived on the scene.  He            testified that his cousin's name is Tina Guillemette, she was            twenty-seven or twenty-eight years old, and he does not know            where she lives now.                      Although she was not a witness to the blond-girl            incident, Levasseur's wife, Judith Levasseur, testified to            historical facts underlying Levasseur's explanation of the            incident.  Judith Levasseur testified that Tina Guillemette            is Levasseur's cousin, she was approximately twenty-eight            years old on July 13, 1988, and does not look sixteen years            old.  Judith Levasseur also testified that Tina Guillemette            is not a good friend of her husband's, it would be unusual            for Levasseur to go swimming with Tina Guillemette and his                                         -22-
                                          22

            aunt, and she knows how to get to Tina Guillemette's house in            Lowell.                       To rebut the Levasseurs' testimony, the district            attorney called Inspector Guilfoyle.  Consistent with            Boutselis, Guilfoyle testified to seeing a young blond girl            walking on the sidewalk, Levasseur's truck pulling up next to            her, Levasseur motioning to her, and the girl continuing to            walk on.  After having spoken with the blond girl in close            proximity, Guilfoyle presumed that she was sixteen or            seventeen years old.                      We begin our assessment of the strength of the            blond-girl incident by noting that although the Inspectors            and Levasseur provided competing explanations of the blond-            girl incident, consideration of the nature, source and extent            of the contradictions between the stories reveals the            weakness of Levasseur's explanation.  Boutselis' and            Guilfoyle's testimony, Levasseur's prior statements to the            police, and his wife's testimony all contradict Levasseur's            explanation on significant details.  We briefly note each of            the contradictions.                      After talking with the blond girl face-to-face,            Guilfoyle testified that the blond girl was sixteen or            seventeen years old, and Boutselis estimated that she was            sixteen after seeing her from the police car.  Levasseur,            however, testified that Tina Guillemette was twenty-eight                                         -23-
                                          23

            years old and Levasseur's wife testified that Tina            Guillemette does not look sixteen.  Boutselis and Guilfoyle            both testified that Levasseur had beckoned and called "Come            on" to the blond girl, consistent with offering her a ride,            whereas Levasseur testified that he was dropping his "cousin"            off.  Similarly, Guilfoyle testified that the blond girl was            walking along the sidewalk before Levasseur pulled over,            which is also inconsistent with Levasseur's claim that he was            dropping her off.                      Levasseur's statement to Boutselis immediately            following the blond-girl incident contradicted his trial            testimony.  Boutselis testified that when he questioned            Levasseur on the day of the blond-girl incident, Levasseur            explained his encounter with the blond girl as offering to            give his cousin a ride and he did not provide his cousin's            name when asked.  However, Levasseur testified at trial that            he was dropping his cousin off and his cousin's name is Tina            Guillemette.                      Most telling, perhaps, is that even Levasseur's            wife, testifying to seemingly innocuous background            information, indirectly contradicted Levasseur.  While            Levasseur claimed that he had gone swimming with his aunt and            his cousin on July 13, 1988, Judith Levasseur testified that            Levasseur and Guillemette were not good friends and such an            event would have been an unusual occurrence.  Similarly,                                         -24-
                                          24

            after Levasseur testified that he did not know where Tina            Guillemette now lives, Judith Levasseur testified that she            knows how to find Guillemette.  This testimony raises the            question why Levasseur would not have contacted Guillemette            to have her testify and corroborate his testimony if his wife            knows where she lives.9  Given her importance to Levasseur's            explanation of the blond-girl incident, Tina Guillemette is            notably absent.                        Having noted the contradictions discounting            Levasseur's explanation, we must assess how strong Inspectors            Boutselis' and Guilfoyle's testimony about the blond-girl            incident is as evidence of Levasseur's guilt.  Even without            the hearsay evidence, Boutselis' and Guilfoyle's testimony            presents circumstantial evidence that the blond girl did not            know Levasseur and he had offered her a ride.  For instance,            that Levasseur did not know the blond girl can be inferred            from Boutselis' and Guilfoyle's testimony that the blond girl            kept walking, did not stop and talk with Levasseur and did                                
            ____________________            9.  Although  a  similar   question  may  be  asked   of  the            prosecution  regarding its failure to  call the blond girl to            testify,  its  failure   to  do  so  seems   more  excusable:            Inspectors  Boutselis and  Guilfoyle did  not  get the  blond            girl's name and address.   After learning from the blond girl            that she did not know Levasseur and he had offered her a ride            and  deducing that  Levasseur was  following  the same  modus
                                                                    _____            operandi  used  to lure  Doe  into the  truck,  Boutselis and
            ________            Guilfoyle  immediately pursued Levasseur, who had driven away            from  the scene moments  before.  Under  these circumstances,            one can  excuse Boutselis  and Guilfoyle  for not taking  the            additional time needed to remain  and obtain the blond girl's            name and address.                                          -25-
                                          25

            not get in his truck.  Similarly, that Levasseur offered the            blond girl a ride can be inferred from the testimony that            Levasseur beckoned to her and said "Come on."                        These two inferential facts support the            prosecution's suggestion that, two weeks after Doe's rape,            Levasseur followed the same modus operandi with the blond
                                        _____ ________            girl as was used to lure Doe into the truck.  Because this            evidence makes it more probable that Levasseur raped Doe, it            is moderately probative of Levasseur's guilt.10                      Considering the prosecution's case cumulatively, we            find Doe's strong identification of Levasseur corroborated by            moderately strong evidence of modus operandi.  Levasseur's
                                          _____ ________            defense, in contrast, is too unsound to weaken the            prosecution's case.                      c.  Levasseur's defense
                      _______________________                      Levasseur's defense was misidentification, and it            entailed his refutation of the charges and an alibi.             Levasseur's alibi and his refutation testimony are weak            exculpatory evidence, however, because Levasseur's alibi            witness was sleeping during the time of the disputed event,            and the district attorney impeached Levasseur's credibility.                                 
            ____________________            10.  This  evidence  becomes  stronger  evidence  of   guilt,            however, considering that  the inconsistencies likely damaged            Levasseur's  credibility  overall  and   affected  the  other            elements of his defense, i.e., that  he did not know Doe  and
                                     ____            that he was misidentified.                                         -26-
                                          26

                      Levasseur's wife, Judith Levasseur, was his alibi            witness.  She testified that on the night of the rape, she            and Levasseur obtained take-out pizza (as was their custom on            Thursday nights), drove home, ate it, watched television and            went to bed around 10:00 p.m.  On cross-examination, the            district attorney elicited the following damaging            information:  Judith Levasseur is a heavier sleeper than her            husband and she frequently does not awaken when he gets out            of bed during the night.  Even accepting Judith Levasseur's            testimony as true, she was asleep during the hours            surrounding the incident and could not consciously account            for Levasseur's presence in bed at that time.  The rape            occurred sometime after midnight, leaving Levasseur ample            time to get out of bed undetected, get dressed and reach the            scene of the incident in nearby Lowell.                        On direct examination, Levasseur resolutely denied            that he had raped Doe and testified consistently with his            wife that on June 30, 1988, the night in question, they had            taken pizza home and gone to bed.  On cross-examination,            however, the district attorney impeached Levasseur's            refutation.  The district attorney elicited from Levasseur            that on July 13, 1988, at the police station he had told            Inspector Boutselis that at 9:00 p.m. on June 30, 1988, he            could have been driving around downtown Lowell, but he was                                         -27-
                                          27

            not sure.11  Levasseur admitted that he only became sure            about his whereabouts after he spoke with his wife and her            immediate family.  Levasseur conceded, however, that his in-            laws were not with Levasseur and his wife on June 30, 1988.            Therefore, their assistance in reconstructing his whereabouts            is dubious.                      In addition to the impeachment of Levasseur's            testimony about the blond-girl incident, the district            attorney also impeached Levasseur's credibility more            generally with another logical inconsistency.  Levasseur            testified on direct that he had offered to give Inspector            Boutselis a sperm sample while he was at the police station            on July 13, 1988.  On cross-examination, however, Levasseur            conceded that as of July 13, 1988, the police had not            specifically informed him that he was suspected of rape; they            had only made vague references to abusing some girl and            claims of sexual harassment.  With this line of questioning,            the district attorney implied that Levasseur disclosed a            guilty mind by offering a sperm sample when all that was            charged was battery and sexual harassment, neither of which            necessarily involve the ejaculation of semen.                                
            ____________________            11.  In contrast, Boutselis testified that Levasseur had told            him that "he was  in the Lowell area, the  downtown area from            9:00 p.m. on, but he couldn't recall his exact whereabouts or            account for his exact whereabouts."                                         -28-
                                          28

                      Given the inability of Levasseur's alibi witness to            vouch for his whereabouts and the widespread impeachment of            Levasseur's testimony, Levasseur's shaky defense case helped            the prosecution's case more than it hurt it.  After comparing            the prosecution's case to Levasseur's defense, we conclude            that the strength of the prosecution's remaining evidence of            guilt, relative to Levasseur's defense, minimizes the impact            of the improperly admitted evidence on the jury's verdict.                      Having determined that the error did not permeate            the record, the issue affected by the error was not central            to the prosecution's case, and the prosecution's case minus            the inadmissible evidence was strong, we find with fair            assurance that, in light of the record as a whole, the            Confrontation Clause violation did not substantially            influence the jury's verdict, and therefore it was harmless.                      We now turn to Levasseur's remaining arguments.            C.  Pre-trial Identification
            ____________________________                      Levasseur also contends that the district court            erred by holding that Doe's December 17, 1988, identification            of him in his truck one-half mile from his home was not            unduly suggestive and did not violate the Due Process Clause.             We disagree and affirm for the reasons set forth in the well-            reasoned opinion of the district court below.  Levasseur v.
                                                           _________            Pepe, No. 93-10832-DPW, slip op. at 14-22 (D. Mass. Feb. 28,
            ____            1995).  Careful review of the record convinces us that the                                         -29-
                                          29

            district court was correct in finding that Doe's            identification of Levasseur, under the totality of the            circumstances, possessed sufficient indicia of reliability,            as we discussed in section B.3.a. supra, and that counsel's
                                              _____            failure to object to the identification was not ineffective            assistance of counsel.            D.  Ineffective Assistance of Counsel
            _____________________________________                      Levasseur contends that the district court erred in            concluding that Levasseur was not denied effective assistance            of counsel when his trial counsel failed to object to the            hearsay testimony of the blond girl, failed to object to the            testimony of Levasseur's prior bad acts offered solely to            impugn his character, failed to object to the jury            instruction on identification, and failed to call a rebuttal            witness claiming to be the blond girl.  We disagree and            affirm for the reasons set forth in the opinion of the            district court below.  Levasseur v. Pepe, No. 93-10832-DPW,
                                   _________    ____            slip op. at 27-32 (D. Mass. Feb. 28, 1995).  Careful review            of the record convinces us that the district court was            correct to find that only one of the alleged errors amounted            to deficient performance--the failure to object to the            hearsay testimony of the blond girl--but that no actual            prejudice resulted therefrom.                                             -30-
                                          30

                                         II.
                                         ___                                      CONCLUSION
                                      __________                      In sum, we find that Levasseur procedurally            defaulted on his Due Process Clause and Confrontation Clause            claims; the Confrontation Clause violation was harmless            error; the pre-trial identification procedure was not unduly            suggestive and counsel's failure to object to the            identification was not ineffective assistance of counsel; and            Levasseur was not denied effective assistance of counsel.                       For the reasons articulated, the district court did            not err in denying the application for habeas relief.  The            district court's judgment is affirmed.
                                         ________                                         -31-
                                          31


